## Kentucky Joint Stock Land Bank of Lexington v. Coon's Executrix et al.

(Decided Dec. 9, 1932.)

740

ROBERT H. HAYS and R. G. KERN for appellant.

ROBERT H. WINN, W. B. WHITE and W. E. NICHOLS for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

On May 11, 1923, Thomas N. Coons and his wife, Virginia Coons, executed a note for $37,500 and mortgage securing it, on a tract of land in Bath county; the debt was payable in seventy-eight semiannual installments of $1,246.13, with interest at 6 per cent. after maturity. On October 15, 1925, they made a general assignment for the benefit of their creditors to R. G. Kern, and the assignment was duly recorded in the office of the county clerk of Bath county. Thomas N. Coons was a son of Josiah Coons and a brother of H.

N. Coons; Elijah Coons was a greatuncle. They were all his sureties on his debts. They signed the following paper:

"To the creditors of Thomas N. Coons and Mrs. Virginia Coons, joint and separate:

"Gentlemen: We the undersigned Josiah Coons, H. E. Coons and Elijah Coons hereby rerresent and state to you that if it can be arranged by consent of you creditors that the deed of trust made by the said Thomas N. Coons and Virginia Coons to R. G. Kern, Esq. for the sale of said Coons' property in trust for their creditors can be set aside and cancelled (said deed being dated the 15th day of October 1925, and of record in Deed Book 87, page 163, in the Bath County Clerk's office) we will pay, and this may be taken as our promise and undertaking to pay, to each creditor of the said Thomas N. Coons and Virginia Coons, or either, each and every debt owing by the said Coons, or either of them, to each and every such creditor.

"This paper is prepared for the signatures of the creditors and their acceptance of this arrangement as below; but it will not be binding until all of said creditors have signed this agreement, or have in writing requested the said Kern to surrender up the said trust by reconveying the estate and assets of the said Thomas N. and Virginia Coons back to them.

"We also understand and agree that this arrangement does not affect in any way the full force and validity of such securities or liens as any of said creditors may now legally hold.

"Witness our hands this 13th day of November, 1925.

"Josiah Coons
"H. E. Coons
"Elijah Coons."

On the back of the paper was the following:

"We, the undersigned creditors of T. N. Coons and Mrs. Virginia Coons, some being creditors of both and some of one only, hereby accept the fore-

going set out proposition, and request R. G. Kern as assignee of the said Thomas N. Coons and Virginia Coons to convey back to them the property named in the above deed, both real and personal, and of every nature and kind which may have come to him by virtue of said trust; and upon such reconveyance we hereby absolve and release the said Kern and his sureties from all obligations of every nature and kind incident to and arising out of said trust.

"All of the said creditors in signing this paper do so with the explicit understanding and agreement that the lawful securities held by them and any and all of them are not released, modified, or affected."

They sent the paper out to the creditors, and it was signed by all the creditors except the Kentucky Joint Stock Land Bank of Lexington. There is some dispute in the evidence as to what happened as to it. According to the proof for the bank, it did not ever decline to sign the paper, but only asked an additional paper to hold in its possession so that it would have this paper to show the bank examiner. On the other hand, the proof for the appellees is that the bank declined to sign the above paper, and wrote out and sent to Elijah Coons a paper to be signed by him. He signed it and sent it back to the bank, telling the bank to have Josiah Coons and H. E. Coons to sign it. In some way not explained by the evidence their names were signed to the paper, which is in these words:

"In consideration of the agreement by the Kentucky Joint Stock Land Bank of Lexington that the assignment by Thomas N. Coons and Virginia Coons to R. G. Kern, dated October 15, 1925, of record in Deed Book ——, page ——, Bath County Court Clerk's office, be set aside and cancelled, and if said deed of assignment be actually set aside and cancelled, the undersigned hereby consent and agree and promise and obligate themselves to pay to the Kentucky Joint Stock Land Bank by the said Thomas N. Coons and Virginia Coons, as evidenced by a note and mortgage executed by said parties to said Land Bank, bearing date the 11th day of May 1923, said mortgage be-

ing of record in Mortgage Book 23, page 51-57, Bath County Court Clerk's office and said obligation being in the principal amount of $37,500, and the undersigned bind and obligate themselves to pay said obligation according to the terms and conditions of said note and mortgage which are hereby referred to, to have the same effect as if fully and completely copied herein.

"Executed at Lexington, Kentucky this November 14, 1925.

"[Signed] Josiah Coons
"H. E. Coons
"Elijah Coons."

The bank, after receiving the above paper, signed its acceptance of the former paper, and it was sent to the county clerk, and, on proper proceedings had, the assignment above referred to was set aside.

Elijah Coons died on October 1, 1928, and this action was brought by his executrix for the settlement of the estate. Among other things, the above facts were set out as to the release of the general assignment made by Thomas N. Coons, and the bank was called upon to set up any claim it had against the estate of Elijah Coons. The bank by its answer and cross-petition set up the second paper quoted above, and prayed judgment against Elijah Coons, H. E. Coons, and Josiah Coons thereon; H. E. Coons and Josiah Coons filed an answer non est factum and alleging that they did not sign or deliver the paper sued on. Elijah Coons' executrix pleaded the same facts, and alleged he was not bound because he had executed the paper on condition that Josiah and H. E. Coons were to sign it. The bank then amended its answer and cross-petition and set up the paper first above quoted, and prayed judgment thereon. The defendants then defended on the ground that this paper was never accepted by the bank, and that it only accepted the second paper. The issues were made up, proof was taken, and on final hearing the circuit court gave judgment in favor of the defendants. The bank appeals.

The proof on the trial showed that Josiah Coons and H. E. Coons did not sign the second paper above quoted, and that Elijah Coons signed it and sent it to the bank, telling the bank to get them to sign it. Under

744

the evidence, no judgment could be given against Josiah Coons and H. E. Coons on this paper, for there was no proof that they had signed the paper, and, under the proof, no judgment could be given against Elijah Coons, for the paper was incomplete when signed by him, and it was not to be delivered as an obligation until signed by the other two Coons. It remains therefore to determine whether the bank may recover on the first paper above quoted. It is earnestly insisted that the bank did not accept this paper; but the bank in fact signed the acceptance and sent the paper to the clerk's office, and judgment was there entered setting aside the assignment, which was the thing that was proposed to be accomplished. It is undisputed that all three of the Coons signed this paper, and it is undisputed under the proof that the bank accepted the paper, but it is insisted that its acceptance of this paper was brought about by the second paper and that that paper was never signed by all the parties, and in fact created a different obligation from the first paper. But the court is unable to see that there was any substantial difference between the two papers, except that the first included all the creditors, including the bank, and the second was an obligation only to the bank. It is insisted that the second paper bound all the obligors to pay the obligation to the bank "according to the terms and conditions of said note and mortgage, which are hereby referred to, to have the same effect as if fully and completely copied herein," and that under this the obligors were bound to make semiannual payments of $1,246.13 for thirty-nine years, and that this was not the obligation created by the first paper. But the first paper bound the obligors to pay "to each creditor of the said Thomas N. Coons or Virginia Coons or either, each and every debt owing by the said Coons or either of them to each and every such creditor." It was also stipulated in that paper that it should not "affect in any way the full force and validity of such securities or liens as any of said creditors may now legally hold." There were also these words in that paper:

"All of the said creditors in signing this paper do so with the explicit understanding and agreement that the lawful securities held by them and any and all of them are not released, modified or affected."

The promise to pay the debts of the creditors, as contained in this paper, was the same as the promise to

pay the bank's debt according to the terms and conditions of the note and mortgage, for the note and mortgage were the writings which determined the amount of the debt and the nature of it. The mortgage was the security held by the bank; it set out the conract it was to secure, and by the very terms of the second paper the securities held by the creditors were not released, modified, or affected. The legal effect therefore of the two papers was the same. The bank did in fact accept the first paper in writing, and the fact that the second paper was not signed by H. E. Coons and Josiah Coons in no manner affects the rights of the bank, for that paper added nothing to the first paper which all the parties signed. Though H. E. Coons and Josiah Coons are not bound on the second paper, all three of the Coons are bound on the first paper, which was finally accepted by the bank.

A closer analysis of the situation, even from the standpoint of appellees, will demonstrate the correctness of our conclusion. They contend that the bank insisted on not being bound by the first agreement, unless it received the second one, made directly to it, but with no additional obligatory force than was created by the first agreement which was addressed to all creditors, including the bank, of Thomas N. Coons and wife. In that case the second agreement, so insisted on by the bank, would be exclusively for its benefit, if indeed it benefited any one, and it could at any time before the proposition embodied in the first agreement was withdrawn withdraw that insistence and accept the first agreement, which it did. That acceptance by it may have been induced by its receiving the second paper. But, if in so doing, it accepted a paper only partially executed, and thereafter accepted the first agreement before it was withdrawn by its obligors, then the latter have no ground to complain, since what was abortively attempted never inured to their benefit, although it resulted in the complete execution of the first agreement by the bank, and which it caused to be properly recorded. It was carried into execution through the setting aside of the deed of assignment theretofore made by Thomas N. Coons and wife to Kern, and presumptively the obligors in the first agreement took charge of the assigned property. The bank waived its insistence by signing the first agreement. We therefore re-

peat that it is clear to our minds that the first agreemen became effectual from and after the time it was signed by the band, and that the failure of the second agreement to become properly executed, constitutes no defense to liability on the first agreement. The question, What would be the rights of the parties if the second paper had created an obligation to the bank not created by the first paper? is not presented.

The bank by the terms of the mortgage was authorized to elect to treat its whole debt as due if the conditions of the mortgage were not performed. By its pleading it so elected, alleging that the balance due thereon was $35,781, with interest at 6 per cent. from September 11, 1929. No issue was joined on these allegations. The action was brought in equity and tried as other equity actions. On the facts, the court should have entered judgment for the bank.

Judgment reversed, and cause remanded for a judgment as above indicated.